ACME CORPORATION *vs.* UPDIKE C. MOWRY, *C. T.*
OCTOBER 29, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Condon, J. This is a bill in equity to restain the respondent from selling the real estate of the complainant to enforce the collection of taxes assessed under two alleged void assessments for the tax years 1932, 1933. The cause was heard in the superior court on bill, answer and proof, and at the conclusion of the evidence the trial justice ordered entry of a decree declaring said assessments of the aforesaid

real estate invalid, and restraining the respondents from advertising said real estate for sale. From this decree, the respondent has duly prosecuted his appeal to this court. The complainant has also prosecuted an appeal from the the decree as entered by the trial justice on the ground that the decree which it, the complainant, had prepared was erroneously refused entry.

The complainant is the present owner of the real estate alleged to have been invalidly assessed in 1932 and 1933, but it did not become such owner until August and October of 1934. This real estate is situated in the village of Carolina, in the town of Richmond, and consists of mill property, water rights and tenement houses in said village. In 1932, at the time of the assessment for that year and for a long period of time prior thereto, said real estate was owned by the Carolina Company. At the time of the 1933 assessment, however, the property had come into the possession and ownership of William McVay, to whom it was assessed in that year.

The taxes for 1932 assessed to the Carolina Company, and those for 1933 assessed to McVay having remained unpaid, the said real estate was advertised in June 1934 for sale for the payment of 1932 taxes. This sale was adjourned from time to time, finally to May 21, 1935, when the present bill was filed to restrain said sale and also a further sale for 1933 taxes for which proceedings had been started just prior to the filing of said complaint.

The real estate in question had long been known to the assessors as the Carolina Mill Estate and as such it was assessed in the same way in 1932 and 1933, as it had been for several years prior thereto. This real estate consisted of certain noncontiguous parcels of land with water power and improvements and appeared on the tax roll in the following manner:

| "Name and Description | Land | Bldgs. & Imps. |
|---|---|---|
| "Carolina Company, The, mill estate, water power and land | 4000 | 23000 |
| Carolina Company, The, No. 9 and 9-A, Library building and tenement, Carolina | | 1000 |
| Carolina Company, The, No. 10, band building, Carolina | | 300 |
| Carolina Company, The, No. 12, boarding house, Carolina | | 1400 |
| Carolina Company, The, No. 13, one-tenement house, Carolina | | 600 |
| Carolina Company, The, No. 14, one-tenement house, Carolina | | 1000 |
| Carolina Company, The, No. 15-16, two-tenement house, Carolina | | 1200 |
| Carolina Company, The, No. 17, superintendent's house, Carolina | | 6000 |
| Carolina Company, The, No. 18-19, two-tenement house, Carolina | | 1000 |
| Carolina Company, The, No. 20, one-tenement house, Carolina | | 600 |
| Carolina Company, The, No. 21, store building, Carolina | | 1000 |
| Carolina Company, The, No. 22-23, two-tenement house, Carolina | | 600 |
| Carolina Company, The, No. 24-25, two-tenement house, Carolina | | 600 |
| Carolina Company, The, No. 26-27, two-tenement house, Carolina | | 300 |
| Carolina Company, The, No. 28-29, two-tenement house, Carolina | | 300 |
| Carolina Company, The, No. 30-31, two-tenement house, Carolina | | 800 |
| Carolina Company, The, No. 32-33, two-tenement house, Carolina | | 800 |

| "Name and Description | Land | Bldgs. & Imps. |
|---|---|---|
| Carolina Company, The, No. 34-35, two-tenement house, Carolina | | 800 |
| Carolina Company, The, No. 36, one-tenement house, Carolina | | .300 |
| Carolina Company, The, No. 37-38, two-tenement house, Carolina | . | 800 |
| Carolina Company, The, No. 39, one-tenement h o u s e, Carolina (Adkins) | | 600" |

The complainant contends that this assessment is not in accordance with the provisions of general laws 1923, chapter 59, sec. 4, and is therefore invalid. Said sec. 4 reads as follows: "Taxes of real estate shall be assessed to the owners, and separate tracts or parcels shall be separately described and valued so far as practicable: *Provided, however,* that no misdescription, defect in description, or mistake in valuation, so long as the estate assessed can be identified, shall be taken advantage of by any taxpayer in order to avoid the payment of a tax assessed against him, unless he shall have brought to the assessors a true and exact account of all his ratable estate, describing and specifying the value of every parcel of his real and personal estate, at such time as they may prescribe for the assessing of the tax."

The respondent admits that the express direction of the statute was not complied with by the assessors, but contends that the proviso precludes the complainant from setting up such noncompliance of the assessors. There is no dispute about the facts in this case. The assessors did not separately describe and separately value each separate tract or parcel of land, and the owner on the other hand did not bring in to the assessors a true and exact account of all of its ratable estate, describing and specifying the value of each parcel. There is evidence that two officers of the Carolina Company had furnished the information upon which the description on the assessment roll was based, and that

they had approved the form of the assessment in 1932, as did the later owner, McVay, in 1933.

It is not contended by the respondent that it was not practicable for the assessors to value and describe each parcel separately. From the evidence it would appear that it was practicable to do so, but that the tax assessors deemed the necessity for doing so was obviated by the action of the owner in approving the assessment in the form in which it had been made for several years and which previously had been based upon specific information, supplied by the Carolina Company through its officers, as to the separate parcels of real estate.

There can be no doubt whatever that sec. 4 is mandatory upon the assessors. They must separately describe and separately value separate tracts, unless it is impracticable to do so. If they fail to do so, the assessment is invalid. *Young* v. *Joslin,* 13 R. I. 675; *Evans* v. *Newell,* 18 R. I. 38; *Taylor* v. *Narragansett Pier Co.,* 19 R. I. 123; *Clark* v. *Greene,* 23 R. I. 118.

The proviso in such a case is of no aid in curing the invalidity. That proviso, it will be seen upon careful reading, excuses only a misdescription, a defect in description or a mistake in valuation. In the instant case the thing complained of is not any of these, but rather an absolute neglect to describe at all separately any of the parcels assessed. The action of the assessors amounts to merely a lumping together, so to speak, of all parcels of land in an unspecified mass at a valuation of $4000, together with a detailed list of variously numbered buildings separately valued, it is true, but not located with reference to the particular tract or parcel of land upon which each building stands. Clearly this is a failure to comply with the mandate of the statute that "separate tracts or parcels shall be separately described and valued so far as practicable." This mandate does not necessarily require the platting of assessable land of the town into lots numbered to each owner, nor does it require meticulous

description by metes and bounds. A general description which serves to identify the tract and distinguish it in such a manner as to inform the owner with certainty of the assessment and of the property upon which the tax is levied is sufficient. *Hopkins* v. *Young*, 15 R. I. 48. In that case, unlike the instant case, three tracts of land assessed were separately described but complaint was made that the description employed in each instance was vague and uncertain. This contention was rejected by the court as unsound and it was declared that to require a description by metes and bounds would be cumbersome and impracticable. A description sufficient to identify the property in case of a sale, the court said, was sufficient.

The assessment of the several parcels of real estate in the instant case, therefore, is invalid because of failure to describe each of them separately and to value each of them separately, unless there are circumstances which go to excuse nonobservance of the mandate of the statute or to render observance thereof impracticable. *Young* v. *Joslin*, *supra*. It does not appear from the evidence that it was impracticable for the assessors to comply with this mandate. It does appear, however, that there were circumstances in this case which clearly excused them from this duty.

The chairman of the board of assessors testified that in 1932 the members of the board had gone to the Carolina mill office for the purpose of obtaining information in making the annual assessment of the company's property in the town. There, speaking for the board, the chairman talked about the assessment with William R. Hinchcliff, superintendent in charge of the company's mill. After some discussion, as to whether the company intended to file a return according to law, the assessors were referred to a blueprint, showing a plan of all the company's real estate in the town, which plan or blueprint was in the mill office at that time but which had disappeared after the closing of the mill.

In referring the assessors to the blueprint, the chairman of the board testified that Mr. Hinchcliff said: "Here is all our land, there is everything we own. Now treat us as well as you can." This blueprint showed the location of the mill and also the various other buildings belonging to the company in the village of Carolina which were indicated on the blueprint by numerals corresponding to certain metallic numerals on the buildings themselves. The assessors used this description exactly on their assessment roll and personally inspected the various buildings indicated, before making their valuation. It was also testified that the board had followed the same method for several years previous to 1932.

In 1933, the property having come into the ownership of William McVay, the assessors called upon him at his store in the village and showed him how the Carolina Mill Estate had been described in prior years and, according to the testimony of the chairman, he expressed himself as satisfied with such description. At no time subsequent to the assessment in this form in 1933 did McVay complain concerning it, and neither did the Carolina Company subsequent to the assessment of 1932. It was only when the present complainant came into possession of the property, and proceedings were started to collect these taxes, that any complaint was made. This was the first time the board had heard of any dissatisfaction with the manner in which it had described the property on the assessment roll.

The complainant objected to this evidence but we think it was competent and relevant to the issues presented to the court. The complainant further objects, however, that even if it was proper to admit such evidence, it is of no avail to the respondent, as it does not furnish a legal foundation for a waiver of the statutory mandate incumbent upon the assessors to describe separately and to value separately the complainant's property.

The complainant cites early cases of this court in support of this contention, but we are of the opinion that the cases

cited do not sustain him. For example, in the earliest case of *Young* v. *Joslin, supra,* while the court held that the statute was mandatory, it very carefully limited its decision in the following words: "The courts of the different states, in such matters, must each construe their own statutes very much for themselves, resorting to the adjudications in other states for aid rather than authority. Construing our statute so, relying upon reasons which commend themselves to our minds as enlightened by the decisions of other courts, we have come to the conclusion that the regulation prescribed by sec. 4 in regard to separate description and valuation must be regarded as mandatory, where there are no circumstances which go to excuse its non-observance, or to render it impracticable." This case has been cited in all, or practically all, the later cases, and has been approved or followed. Clearly, therefore, the law in this state is, regardless of what text writers may assume it to be, that the statute is mandatory, unless it can be shown (1) that it is impracticable to follow the mandate, or (2) that circumstances exist which excuse its nonobservance.

The question here is: Are the circumstances, testified to by the chairman, under which these assessments of 1932 and 1933 were made, and which testimony is undisputed, sufficient in themselves to excuse the nonobservance of the statute? We are of the opinion that they are. Where the owner furnishes to the assessors his own description of his property, or if there are separate tracts, furnishes the information to the assessors of the manner in which he, himself, identifies each tract, with the improvements thereon, and the assessors thereupon adopt such information as their own in describing such property on the assessment roll, the owner or his successor in title will not be heard later to complain that the mandate of the statute has not been observed, and thus seek to avoid payment of the tax assessed against him. See *Warwick & Coventry Water Co.* v. *Carr,* 24 R. I. 226, where, in distinguishing that case from *Kettelle* v.

*Warwick & Coventry Water Co.,* 23 R. I. 114, the court said: "But it did not appear in that case, as it does in this case, that the taxpayer had furnished his own description of his property. If he describes his property himself he has the benefit, which the statute is intended to give him, of knowing what property is assessed."

In the instant case, the owner of the property in 1932, and for several years prior thereto, furnished the assessors with the description which was used on the assessment roll. It paid the taxes assessed without complaint until 1932. In the latter year, although it did not pay the taxes assessed, it made no complaint of the manner in which the assessment of its property was made. In 1933 its successor in title, McVay, approved the description previously furnished by the Carolina Company, and did not later complain of the action of the assessors in again using this description in assessing the property to him.

It appears from the transcript that the trial justice did not deem this evidence relevant in proof of a waiver of the mandate of the statute, although he admitted it over the objection of the complainant. We think it was relevant, and we are of the opinion that, standing as it does uncontradicted and undisputed on the record, it establishes the existence of circumstances, which excused the respondent's assessors from observing the mandate of the statute to separately describe and separately value the complainant's property at the time it was owned by the Carolina Company and by William McVay, complainant's predecessors in title. It follows, therefore, that the decision of the trial justice is erroneous.

With reference to the complainant's appeal, it may be said here that the only way in which this property may be sold is in one lot, as advertised by the assessors. In view of the manner in which the assessment is made, it is impossible to hold a sale in any other manner.

For the reasons above stated, respondent's appeal is sustained and complainant's appeal is denied and dismissed. The decree appealed from is reversed, and the cause is remanded to the superior court for entry of a decree dismissing the bill.

*Max Winograd, Marshall B. Marcus,* for complainant.
*Tillinghast, Collins & Tanner, Russell P. Jones,* for respondent.